COMMONWEALTH of Pennsylvania, Appellee

v.

Daniel PLANTE, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 17, 2006.

Filed Dec. 28, 2006.

---

Khoi T. Pham, West Chester, for appellant.

Julie M. Hess, Asst. Dist. Atty., West Chester, for Commonwealth, appellee.

BEFORE: STEVENS, PANELLA, and JOHNSON, JJ.

OPINION BY STEVENS, J:

¶ 1 Following a jury trial on May 3, 2006, Appellant, Daniel Plante, was found guilty of one count of Receiving Stolen Property.[1] This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Chester County on May 31, 2006, at which time Appellant was sentenced to an aggregate term of imprisonment of sixteen (16) months to forty-eight (48) months. We affirm.

¶ 2 The procedural history in the instant matter is as follows: On February 24, 2005, Appellant and his co-defendant, Daniel Smalfus, (hereinafter "Smalfus") were arrested and charged with Receiving Stolen Property. On August 5, 2005, Appellant filed a motion to suppress evidence. After a hearing and oral argument on that motion on September 22, 2005, the trial court issued an Opinion in which it denied Appellant's motion to suppress, and the matter later proceeded to trial. After the jury rendered its guilty verdict, Appellant was sentenced on May 31, 2006, and filed a timely appeal on June 7, 2006. On June 8, 2006, the trial court ordered Appellant to file a concise statement of matters complained of on appeal before June 22, 2006. When such statement was not timely filed, the trial court filed a request to dismiss the appeal for Appellant's failure to comply with its order. On June 28, 2006, Appellant filed a Concise Statement of Matters Complained of on Appeal and the next day filed a petition to accept the statement *nunc pro tunc.* The trial court granted Appellant's request in light of the parties' having entered into a Stipulation to File 1925(b) Concise Statement of Matters Complained of on Appeal, *Nunc Pro Tunc.*[2]

---

1. 18 Pa.C.S.A. § 3925(a); Appellant had plead guilty to this charge on February 7, 2006, and the trial court later granted a Motion to Withdraw that plea on April 24, 2006.

2. In his Petition to Accept 1925(b) Concise Statement of Matters Complained of on Appeal *Nunc Pro Tunc*, which was filed on June 29, 2006, Appellant explained that due to a breakdown in the Clerk of Court's Office, counsel of record did not receive the 1925(b) Order, as the Order was delivered to an attorney previously assigned to the case.

¶ 3 During the suppression hearing on Appellant's Motion to Suppress Evidence on September 22, 2005, the suppression court heard the testimony of Officer Darren Sedlak.[3] Officer Sedlak testified he had been a police officer for twelve (12) years and had been with the West Goshen Township Police Department for eight years. On February 24, 2005, at approximately 1:50 a.m., Officer Sedlak was patrolling the township and specifically, the 300 block of Westtown Road and the corporate areas, none of which were open for business at that time. A government services building was located adjacent to this location.

¶ 4 While patrolling in a marked car in the area of 325 Westtown Road, Officer Sedlak noticed a dark gray Ford Crown Victoria, a "police package vehicle," which was unoccupied, not running and backed up to a loading dock.[4] Officer Sedlak, who was familiar with the area, had never seen this vehicle, or any other passenger car, in that location before. Officer Sedlak noted that the license plate was concealed, as the vehicle was parked against the wall.

¶ 5 Officer Sedlak explained that the presence of the vehicle raised his suspicions because the vehicle was in an industrial area and backed into a loading area where passenger cars are not permitted. After illuminating the vehicle to check for further information, Officer Sedlak proceeded around the corner, at which point he noticed two individuals about one hundred yards away. The individuals, who appeared nervous, confused and as if they had been disturbed, spied Officer Sedlak.

As the two walked toward him, Officer Sedlak drove to meet them. When Officer Sedlak asked what the men were doing, they replied they were embarrassed because they were "going to the bathroom." They arrogantly inquired as to whether this was okay, to which Officer Sedlak replied "no" and instructed the individuals to leave. When Officer Sedlak asked where their car was located, the men pointed in the direction of the Crown Victoria Officer Sedlak had seen earlier; when Officer Sedlak asked the men to describe their vehicle for him, they explained it looked like his police cruiser.

¶ 6 Officer Sedlak again instructed the men to leave and began to follow them in his police cruiser. As Appellant and Smalfus began to drive away, Officer Sedlak noticed numerous radio antennae of various frequency bands on the trunk of the car, which again raised his suspicions. He began to doubt the two were just looking for a place to urinate, given their distance from the car when he saw them, their demeanor and the way in which the car was parked. Officer Sedlak reasoned one who had to urinate would park the car, get out and urinate near the car as quickly as possible. Officer Sedlak became concerned that the men were involved in a burglary and was unnerved by the proximity of their activity to the 911 building.[5] He did not feel safe stopping the vehicle until it exited the parking lot, considering its isolated location, so he called for assistance.

¶ 7 Officer Sedlak stopped the vehicle in the 100 block of Westtown Road. Smalfus

---

3. Unless otherwise noted, all facts are drawn from the notes of testimony from the September 22, 2005, suppression hearing.

4. Officer Sedlak explained a police package vehicle is essentially an unmarked police car.

5. Officer Sedlak explained that to the rear of the building numerous sheriffs' vehicles were parked along with hazardous materials vehicles, hazardous materials response vehicles, and numerous vehicles that are used in an undercover capacity through the Chester County District Attorney's Office.

opened the door, as the window on the driver's side was not operable. As he spoke with the men, Officer Sedlak noticed a black wallet with a gold badge in the pocket of the car door. He also observed numerous mobile radios installed and operating on the dash of the vehicle, laptops in the front and rear seats and hand held portable radios. Officer Sedlak inquired as to who owned the car, and Appellant indicated the car belonged to his girlfriend. When Officer Sedlak asked why his girlfriend had so many radios installed in her car, Appellant explained they were his and that he and Smalfus were "fire buffs" who enjoyed listening to radio transmissions. Appellant also explained the badge was not real and that he received it from a friend. Based upon his training and experience, Officer Sedlak was aware that individuals engaging in criminal activity often possess such devices to track the location of police.

¶ 8 Officer Sedlak asked both individuals to step out of the car, as he now became concerned there may be weapons in the car. When asked if either possessed any weapons, both men responded "no weapons" which Officer Sedlak found odd, in that most individuals would simply respond "no." This led the Officer to think the men may have something else on their person. When asked, Appellant revealed he had a portable scanner clipped to his belt and a portable police-style radio, while Smalfus had a pair of sharp-pointed pliers. When Officer Sedlak asked Smalfus whether there was anything in the vehicle he should be concerned about, the latter granted permission to look inside the vehicle, though he refused to grant permission to look in the trunk. In plain view, Officer Sedlak saw the aforementioned objects in addition to various cutting tools, pliers and

screwdrivers which he now believed to be instruments of crime.

¶ 9 Upon performing a background check on each individual, Officer Sedlak learned both had suspended driver's licenses and had had arrests and convictions for receiving stolen property, theft offenses and other misdemeanor crimes. At this juncture, Officer Sedlak issued Smalfus a citation for driving under suspension, the men were released, and the vehicle was towed to the impound yard because according to departmental policy, a vehicle is towed if the driver's license is under suspension and no other passenger in the car has a valid driver's license. Officer Sedlak also requested and received a search warrant for the vehicle. Officer Sedlak discovered ten (10) mobile radios in the trunk, all of which he soon learned had been stolen.

¶ 10 On January 16, 2006, the suppression court denied Appellant's Motion to Suppress. In its Memorandum Order, the suppression court determined that under the particular circumstances of this case, "there was sufficient reliable information to establish probable cause for the issuance of the search warrant." Suppression Court Opinion 1/16/06, at 16.[6]

¶ 11 In his Statement of Matters Complained of on Appeal, Appellant raised a sole issue for our consideration:

> Appellant's motion to suppress evidence unlawfully seized from him should have been granted. Appellant's rights under Article 1, Section 8 of the Pennsylvania Constitution, and under the Fourth and Fourteenth Amendments to the United States Constitutions were violated on February 24, 2005[,] when police, without the necessary probable cause, ille-

---

**6.** This Opinion was re-filed as part of a Supplemental Statement of the Court which was filed on June 29, 2006.

gally conducted a vehicle stop, and then, based upon this vehicle stop, obtained a search warrant and seized the property inside the trunk of the vehicle. The radios found in the trunk were tainted fruit of the unconstitutional stop.

In his brief, Appellant raises the following statement of the questions involved:

I. Did the trial court err by incorrectly applying a reasonable suspicion standard instead of the higher probable cause standard when it considered the legality of the vehicle stop by the police officer, in violation of Appellant's rights under Article 1, Section 8 of the Pennsylvania Constitution, and under the Fourth and Fourteenth Amendments to the United States Constitution?

II. If the reasonable suspicion standard was appropriate, then did the court err by incorrectly finding that the evidence was sufficient to satisfy the requirements of the reasonable suspicion standard, in violation of Appellant's rights under Article 1, Section 8 of the Pennsylvania Constitution, and under the Fourth and Fourteenth Amendments to the United States Constitution?

¶ 12 Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003), *cert. denied, Bomar v. Pennsylvania*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004). The admissibility of evidence is a matter addressed to the sound discretion of the trial court, and an appellate court may only reverse upon a showing that the trial court abused that discretion. *Id.* We may consider whether the record supports the suppression court's factual findings and the legal conclusions drawn therefrom, by reviewing the prosecution's evidence and only so much of the appellant's evidence which is not contradicted within the context of the record as a whole. *Id.* Factual findings unsupported by any evidence may be rejected, but if the record supports the suppression court's factual findings, we may reverse its actions only if the inferences and legal conclusions drawn therefrom are erroneous. *Commonwealth v. Ayala*, 791 A.2d 1202, 1207 (Pa.Super.2002).

¶ 13 This Court has held that there are three levels of interaction between citizens and police officers: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super.2005). A formal or informal interaction between a police officer and a citizen constitutes a mere encounter; the hallmark of such interaction is that it creates no official compulsion to stop or respond. To the contrary, an investigative detention carries an official compulsion to stop and respond. This type of detention is temporary, unless it results in the officer's formation of probable cause for arrest, does not possess the coercive conditions present with a formal arrest, and requires reasonable suspicion of unlawful activity. Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be the functional equivalent of an arrest. *Id.* (citation omitted). The Pennsylvania Supreme Court has held "[t]here is no clear formula for determining whether an interaction constitutes a mere encounter or an investigative detention, but we are guided by the question of

whether a reasonable person, based on the totality of the circumstances, would believe he is free to leave." *Commonwealth v. Bennett,* 827 A.2d 469, 478 (Pa.Super.2003) (citation omitted). *See also Commonwealth v. Reid,* 571 Pa. 1, 27, 811 A.2d 530, 545 (2002) (reargument denied Dec. 30, 2002) *cert denied, Reid v. Pennsylvania,* 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003).

¶ 14 Instantly, Appellant does not specifically challenge the legality of Officer Sedlak's initial encounter with Appellant and Smalfus on the night in question; however, in order to properly set the chronology, we note that this first meeting was a mere encounter and legally valid. Officer Sedlak's contact with the men near the corporate center need not have been supported by any level of suspicion. Officer Sedlak was on routine patrol when he noticed a vehicle backed into a loading dock area, where he had never observed a vehicle that early in the morning. Remarking that the vehicle appeared to be an unmarked police vehicle, Officer Sedlak had a public duty to investigate why the vehicle was present in that location and where its occupants were located.

¶ 15 Though Officer Sedlak instructed the men to leave, he activated his emergency lights and stopped their vehicle shortly thereafter, which stop constituted a second encounter. Appellant argues in his brief that the trial court erred in applying the reasonable suspicion standard, as opposed to the probable cause standard, with regard to this encounter, and as the facts do not support a probable cause justification for the stop, the suppression court's ruling should be reversed. Brief for Appellant at 12. We disagree.

¶ 16 Looking at the totality of the circumstances, we find that a reasonable person in Appellant's position would not have believed he was free to leave. Accordingly, we conclude that Officer Sedlak's arrival with his emergency lights in operation indicated an investigative detention of Appellant was underway. *Commonwealth v. Krisko,* 884 A.2d 296, 300 (Pa.Super.2005) *appeal denied Commonwealth v. Krisko,* 586 Pa. 760, 895 A.2d 1260 (2006). Since this second interaction was an investigative detention, Officer Sedlak was required to have reasonable suspicion of unlawful activity for such a stop to occur. *Id.* "Concluding that [Appellant] was seized within the meaning of the Fourth Amendment, we next must decide whether there were 'specific and articulable facts which, taken together with rational inferences from those facts, reasonable warranted that intrusion.' " *Id. citing Commonwealth v. Lewis,* 535 Pa. 501, 509, 636 A.2d 619, 623 (1994) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

[11] ¶ 17 This Court has declared our standard for determining whether reasonable suspicion exists as follows: "Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Jones,* 874 A.2d 108, 116 (Pa.Super.2005). Therefore, this Court must make an objective inquiry, "namely, whether 'the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate.' " *Commonwealth v. Zhahir,* 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000) (insertion in *Zhahir* ) (citations omitted). "Reasonable suspicion exists only where the officer is able to articulate 'specific observations

which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.' " *Commonwealth v. Johnson,* 833 A.2d 755, 763 (Pa.Super.2003) (*citing Commonwealth v. Reppert,* 814 A.2d 1196, 1204 (Pa.Super.2002)).

¶ 18 As has been articulated above, Appellant and Smalfus behaved in a manner which Officer Sedlak characterized as odd, nervous and arrogant when he first met the men. In addition, their presence in the location concerned Officer Sedlak in light of its close proximity to the 911 building on the lot adjacent to their location, and their excuse for being there was implausible to the Officer. In the present case, we agree with the trial court which stated it was "satisfied that Officer Sedlak possessed enough facts to detain the suspects for an investigative detention, prior to their departure from the corporate center" and that "Officer Sedlak was justified in allowing the vehicle to drive away, following the vehicle and then stopping the vehicle in a safer, more secure location when he knew that his summoned back up was only a half block away." *See* Trial Court Opinion, 6/29/06, at 11–12.

¶ 19 In addition to the suspicions raised when Officer Sedlak conversed with the men, he developed additional grounds for concern as the car pulled away and revealed the numerous radio antennae and differing frequency bands attached thereto which were not visible when the car was parked. With this discovery, Officer Sedlak could discern the men were traveling in a police package car with numerous antennae in a parking lot adjacent to a 911 center which housed undercover police vehicles. As such, we concur with the trial court's statement that:

At the time of the vehicle stop, the officer had an abundance of information that would warrant a man of reasonable caution to believe that the vehicle occupants were involved in criminal activity. Based upon the totality of the circumstances and giving due weight to the experience Officer Sedlak possessed, it is apparent that the vehicles were properly and lawfully stopped to allow the officer to detain the occupants and investigate the situation. The officer's interaction with [Appellant] and [Smalfus] up to this point was completely justified and their Constitutional rights were in no way violated.

Trial Court Opinion, 6/29/2006, at 12.

¶ 20 As has been stated above, upon stopping the vehicle, Officer Sedlak noticed in plain view a black wallet with a badge attached to it, numerous installed and operating radios with transmit capabilities and two laptops in the passenger compartment. Smalfus had pliers on his person and Appellant possessed a portable scanner and a police radio. In addition, Officer Sedlak's record check of the men revealed both had suspended driver's licenses and had arrest and conviction histories for receiving stolen property, theft and other crimes. In accordance with the departmental policy, Officer Sedlak had the vehicle towed from the scene, and obtained a warrant to search the vehicle further. Accordingly, we find the suppression court did not err in applying the reasonable suspicion standard herein and in finding Officer Sedlak had the necessary reasonable suspicion to detain Appellant on February 24, 2005.

¶ 21 Appellant argues in the alternative that even if the reasonable suspicion standard were the proper one, the suppression court erred in finding the evidence was sufficient to satisfy that standard. Brief for Appellant at 12. Howev-

er, our review of Appellant's brief reveals that he has failed to cite to any pertinent legal authority in support of this claim, in violation of Pa.R.A.P. Rule 2119(a). "We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review." *Harris v. Toys "R" Us–Penn, Inc.*, 880 A.2d 1270 (Pa.Super.2005). Accordingly, Appellant has waived this issue for our review. *Id.*

¶ 22 Judgment of sentence is affirmed.