J-S78001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                :            PENNSYLVANIA
                                :
           v.                       :
                                :
                                :
ANJOHNITO WILLET                :
                                :
           Appellant             :      No. 1288 WDA 2016

Appeal from the Judgment of Sentence May 4, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001222-2014

BEFORE:    OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:               **FILED JANUARY 30, 2018**

Appellant, Anjohnito Willet, appeals from the judgment of sentence entered on May 4, 2016, following his jury trial convictions on four counts of recklessly endangering another person (REAP), three counts of aggravated assault, and one count each of attempted homicide and possession of a firearm by minor.[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows. On November 13, 2013, as four students were leaving Brashear High School in Pittsburgh, Pennsylvania, shots rang out from a hill in the woods across the street from the school. Two of the students sustained head wounds from the shooting. The injured students were able to retreat

_____

[1] 18 Pa.C.S.A. §§ 2705, 2702(a), 2501/901, and 6110.1(a), respectively.

_____

*    Retired Senior Judge assigned to the Superior Court.

back into the school as police responded to the scene. An eyewitness reported seeing a male wearing a red hooded sweatshirt on the hill across from Brashear High School, watching students running away. Upon further investigation, police learned that the targeted students had been involved in a physical altercation with Appellant a month prior to the incident and Appellant told a security guard that he was going to come back and shoot one of them.

Investigating officials were dispatched to a duplex building, in the Beechview section of Pittsburgh, to execute a search warrant where Appellant was thought to reside. Police arrested Appellant and interviewed him along with two other men, Antoine Lewis and Tyron Harris, who were with Appellant before and after the shootings and were at the duplex when police arrived. Appellant and Harris lived next door to each other in the duplex. Lewis had been living with Harris. Harris told police that he and Appellant walked through the woods towards Brashear High School around dismissal time on the day of the incident and that he witnessed Appellant fire shots towards students. Lewis told police that, after the shooting, Appellant and Harris asked him to dispose of a gun and bullet magazine wrapped in a towel. Lewis told police that he put the gun and magazine into a book bag and took it to his great grandmother's house. At trial, however, Harris and Lewis recanted their statements to police.

The following evidence was also adduced at trial. Police conducted tests on Appellant, Lewis, and Harris for gunshot residue shortly after the

shooting. All three men tested positive, but only Appellant had traces of residue on both of his hands. Upon executing the search warrant at the duplex, police recovered evidence that Appellant resided in a bedroom on one side of the duplex. From that bedroom, they recovered eight .357 caliber bullets in a bag next to the bed. On the other side of the duplex, Harris' residence, police recovered two red hooded sweatshirts, two smartphones, brass knuckles, ten packets of heroin, and an unfired .22 caliber bullet. Upon analyzing one of the recovered cellular telephones, police discovered photos of one of the shooting victims taken hours before a physical altercation that occurred in October 2013 and 23 photos of Appellant, including a "selfie." There was only one contact listed on that phone and it was for Harris. At trial, the Commonwealth entered the telephone into evidence and police testified that they believed it belonged to Appellant. Police also recovered a book bag from the residence where Harris' great grandmother lived. The bag contained a .357 magnum Ruger revolver and a magazine containing .22 caliber bullets. Finally, police recovered three .22 caliber bullets from the shooting victims. At trial, the Commonwealth presented a firearm expert who opined that all of the bullets recovered from the victims were fired from the same gun, but that it was not possible to fire a .22 caliber bullet from a .357 magnum firearm.

On February 2, 2016, a jury convicted Appellant of the aforementioned offenses. On May 4, 2016, the trial court sentenced Appellant to an

aggregate sentence of 12 to 30 years of imprisonment, with two consecutive years of probation to follow. This timely appeal resulted.[2]

Appellant raises the following issues for our review:

I.   Did the [t]rial [c]ourt abuse its discretion in permitting Detective Cynthia Smith to testify about the contents of the book bag that Antoine Lewis took to his great grandmother's house?

II.  Did the [t]rial [c]ourt abuse its discretion in allowing Detective Wade Sarver to testify about the contents of a [cellular tele]phone that was recovered from Tyron Harris' apartment?

III. Did the [t]rial [c]ourt abuse its discretion in denying [Appellant's] post-sentence motion for a new trial as the verdict was so contrary to the evidence presented at trial that it shocks one's conscience and sense of justice?

Appellant's Brief at 3.

Appellant's first two issues challenge trial court evidentiary rulings. We will examine them together. First, Appellant claims that the trial court abused its discretion by admitting the book bag and its contents (as described above) into evidence. Appellant's Brief at 7-8. In sum, he avers:

---

[2]  Appellant filed a timely post-sentence motion. The trial court permitted amendments to the post-sentence motion upon Appellant's receipt of the transcribed notes of trial testimony. The trial court ultimately denied relief on August 4, 2016. On August 30, 2016, Appellant filed a notice of appeal. On September 1, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After the trial court granted Appellant two requested extensions, Appellant filed a timely Rule 1925(b) concise statement on December 20, 2016. On April 28, 2017, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

The .357 caliber revolver could not have been used in the shooting as it could not fire the bullets recovered from the [shooting] scene. The .22 caliber magazine was not proven to be from the firearm that fired the bullets recovered from the scene, which were of a common and popular caliber. This testimony was overly prejudicial and possessed little-to-no probative value in relation to any material fact at issue in the case and should not have been permitted by the [t]rial [c]ourt.

*Id.* at 8 (record citations omitted).

Next, Appellant argues that the trial court abused its discretion by allowing a police detective to testify about the contents of the cellular telephone recovered from Harris' residence. *Id.* On this issue, he claims:

The Commonwealth sought to and was granted permission to admit into evidence screen captures from the phone in question. The photo screen grabs were from Facebook and purported to show [the victims] Robert Minor and Jaymond Eberhardt and were apparently taken from the residence at which [Appellant] was arrested. The files were apparently created hours after the fight at the high school between [Appellant] and one of the victims. However, it was not possible to tell whose [tele]phone the screen grabs came from and as a result, when they were created.

*        *        *

The contents of the [tele]phone could not be authenticated in any relevant fashion in that the Commonwealth presented no evidence to establish that [Appellant] ever possessed or controlled the [tele]phone or that he was responsible for sending and receiving of electronic data from the [tele]phone. Without this authentication the contents of the [tele]phone were irrelevant, unduly prejudicial, and confusing to the jury.

*Id.* at 8-9 (record citations omitted).

Appellant, however, does not support either of his evidentiary claims with any legal authority, which violates our rules of appellate procedure. *See* Pa.R.A.P. 2119(a). "We have repeatedly held that failure to develop

- 5 -

an argument with citation to, and analysis of, relevant authority waives the issue on review." ***Commonwealth v. Plante***, 914 A.2d 916, 924 (Pa. Super. 2006) (citation omitted). Accordingly, Appellant has waived his first two issues.

Regardless, we previously determined:

> The admissibility of evidence is a matter solely within the discretion of the trial court. This Court will reverse an evidentiary ruling only where a clear abuse of discretion occurs. Generally, an appellate court's standard of review of a trial court's evidentiary rulings is whether the trial court abused its discretion; however, where the evidentiary ruling turns on a question of law our review is plenary.

***Commonwealth v. Woeber***, 2017 WL 5184530, at *2 (Pa. Super. 2017) (internal citations and quotations omitted). "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Upon review of the record, the applicable law, and the parties' arguments, we discern no abuse of discretion by the trial court. The trial court determined that "the book [] bag and its contents [were] highly probative in that they corroborate[d] other testimony and demonstrate[d] actions taken by Appellant and Harris to hide incriminating items." Trial

Court Opinion, 4/28/2017, at 12.[3]   Moreover, the trial court noted that, "[t]he magazine containing .22 caliber ammunition [found inside the book bag was] highly probative since the bullets recovered from the victims were .22 [caliber]." *Id.*   Further, the trial court recognized that the prejudicial effect of introducing the .357 firearm into evidence was minimal because there was testimony that Harris had fired that weapon on the morning of the shootings.  *Id.*   Regarding Appellant's argument pertaining to admission of the cellular telephone into evidence, the trial court determined that there was circumstantial evidence "provid[ing] sufficient authentication that the phone belonged to Appellant and did not belong to Harris."  *Id.* at 13-14. Although the telephone was recovered from Harris' residence, Appellant was inside that residence when police arrived to execute the search warrant, there were multiple photos of Appellant saved on the telephone, and Harris was listed as a contact on the telephone.  *Id.* at 13-14.  Harris' inclusion as a contact in the telephone's directory made it more likely that the telephone belonged to Appellant and not Harris.  We agree with the trial court that the book bag, its contents, and the telephone were properly admitted into evidence and their probative value outweighed any prejudice to Appellant.

_____

[3] We note that a copy of the trial court opinion was not attached to Appellant's brief as required by Pa.R.A.P. 2111(b) ("There shall be appended to the brief [of Appellant] a copy of any opinions delivered by any court or other government unit below relating to the order or other determination under review, if pertinent to the questions involved.")  We remind counsel of his obligation to comply with the Rules of Appellate Procedure.

In his third issue presented, Appellant argues that his convictions were against the weight of the evidence presented at trial. Appellant's Brief at 9-15. Appellant claims that, of all the eyewitnesses who testified at trial, no one saw the actual shooter. *Id.* at 10. When the shooting occurred Appellant was no longer attending Brashear High School and he argues he would not have known the victims would be exiting the school near the shooting incident and not following their usual dismissal routine on the day in question. *Id.* at 11. Moreover, Appellant argues:

> Of the evidence presented at trial, only [] Harris' initial statement to police put a gun in [Appellant's] hand on the day of the shooting. [] Harris' initial statement was not credible for the reasons mentioned by [] Harris himself at trial. [] Harris was anxious, intoxicated, and worried about being charged based upon what detectives might find during the search of his residence. [] Harris wanted to clear his name. The remaining evidence points to other possible shooters, including [] Harris himself. [] Harris admitted to firing a gun that day.
>
> [] Harris, [] Lewis, and [Appellant] all tested positive for characteristic particles of gunshot residue. Based upon the testimony of [Brashear High School's learning environment specialist], [Appellant] was not the only student with a possible motive to harm [] the [] victims. No firearm capable of firing .22 caliber was ever recovered, much less tied to [Appellant]. [Appellant] was described as calm and also a good student with no disciplinary problems. Finally, [] Harris' trial testimony should be accorded greater weight than his initial statement to the police because of the grant of immunity, which would allay [] Harris' fear of being charged for the shooting if he told the truth. Because of the lack of credible evidence establishing that [Appellant] was the shooter, a new trial must be awarded.

*Id.* at 16-17.

Our standard of review is as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a claim using an abuse of discretion standard.

At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. Issues of witness credibility include questions of inconsistent testimony and improper motive. A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit.

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080–1081 (Pa. 2017)

(internal citations and quotations omitted).

Here, the trial court recounted all of the evidence presented and concluded that the verdict was not against the weight of the evidence:

The evidence presented at trial could reasonably lead a jury to conclude that Appellant not only possessed a firearm on the day of the school shooting but that he stood where the shooter had [been] observed and shot at the victims in retaliation for a fight the previous month. The jury's verdict is not contrary to the evidence but rather consistent with it.

Trial Court Opinion, 4/28/2017, at 15.

Based upon our standard of review, we discern no abuse of discretion in rejecting Appellant's weight of the evidence claim. Initially, we note that

the Commonwealth provided substantial evidence of Appellant's motive to shoot the victims in retaliation for an earlier altercation. Next, reliance on any eyewitness discrepancy fails. Here, jurors were confronted with Harris' initial statement to police and his later recantation at trial. The jury was permitted to believe some, all, or none of the evidence presented and we may not usurp their credibility determinations. Furthermore, there was evidence that Appellant directed Lewis to dispose of a firearm and ammunition contained in a book bag. In addition, the Commonwealth presented physical evidence corroborating the testimony at trial. Appellant tested positive for gunshot residue on both hands, which was consistent with him firing a weapon. Moreover, .22 caliber bullets were recovered from the victims, the same caliber of ammunition hidden in the aforementioned book bag. In light of the foregoing, we agree with the trial court that the verdict does not shock one's sense of justice. Accordingly, Appellant's final issue does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2018

- 10 -