J-S44028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IKEEM BEENER | : | |
| | : | |
| Appellant | : | No. 1813 EDA 2017 |

Appeal from the Judgment of Sentence January 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007018-2015

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 17, 2018**

Ikeem Beener (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of firearms offenses,[1] possession of an instrument of crime (PIC), terroristic threats, and intimidation of a witness.[2]  He challenges the sufficiency and weight of the evidence.  We affirm.

Appellant was charged with simple assault, aggravated assault,[3] PIC, intimidation of a witness/refrain from reporting to law enforcement, persons not to possess a firearm, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and two counts of terroristic threats.

_____

[1] 18 Pa.C.S.A. §§ 6105, 6106, 6108.

[2] 18 Pa.C.S.A. §§ 907(a), 2706(a)(1), 4952(a)(1).

[3] 18 Pa.C.S.A. §§ 2701(a), 2702(a)(1).

Appellant and his wife, Shantell Beener, were living at the home of Shantell's sister, Amy Lemar. Lemar's two children and then fiancé (now husband), Markeith Hennix, also lived in the house. On June 10, 2015, Markeith and Amy changed the locks on the door, explaining at trial that they were unhappy with "everybody running in and out, any time of day and night," and that they would open the door for Appellant and Shantell to come into the house. *See* N.T. Trial, 10/7/16, at 25, 38-39, 74.

Amy testified that on June 10, 2015, Markeith called her at work to come home because of a problem with Appellant. *Id.* at 22. When Amy arrived, only Markeith and Shantell were home. Appellant arrived later after Shantell called him. *Id.* at 31. When Appellant arrived, he was infuriated that the lock was changed and argued with Amy in the living room. *Id.* at 24-25. Appellant then went to the front door, returned with a gun, and waved the gun in the air. *Id.* at 25. Amy told him to "calm down" but, Appellant, standing a foot to a foot and a half from Amy, pointed the gun at the floor and fired a shot. *Id.* at 26-27, 52. At trial, Amy stated that if she had not moved her foot, she would have been shot. *Id.* at 27, 53. Amy yelled at Appellant to leave, and he told her, "[I]f you call the cops, I'm shooting up your house. I would shoot your kids." *Id.* at 29. Appellant then left. Amy called Appellant's parole agent and went to the police station to make a report. The Commonwealth presented a photograph of the hole in the floor caused by Appellant's gunshot. *Id.* at 29. Pertinently, defense counsel asked Amy if she showed the bullet

hole to police, and she responded "Look how little it is. You can't see that. You would need somebody to come in and actually look for it because I couldn't see it." ***Id.*** at 64. However, she also subsequently testified, "I wound up finding [the bullet hole] afterwards and I showed them where it was at." ***Id.*** at 68.

Markeith testified that earlier in the day on June 10, 2015, he was at home arguing with Shantell about the changed lock, and Appellant arrived with a gun. ***Id.*** at 75. Markeith called Amy and told her to come home. ***Id.*** at 76. When Amy arrived, Appellant was still there, and the two of them argued. ***Id.*** at 77, 84. Appellant then "walked out towards the hallway" and returned with a gun in his hand. ***Id.*** at 84-85. Appellant pointed the gun at the floor and fired it, causing Amy to "back[ ] up." ***Id.*** at 78, 85. Amy yelled, "You could have shot me," and Appellant responded, "I know what I'm doing," and "Bullets don't ricochet." ***Id.*** at 79, 85-86. Appellant left, but called Amy's cell phone and continued to argue with her. ***Id.*** at 80. Appellant then asked to speak with Markeith and told Markeith, "[I]f any of y'all say my name, I might have my little cousins come and shoot that house up." ***Id.*** at 80. At trial, Markeith was shown the photograph of the bullet hole in the floor and agreed that it was caused by Appellant firing the gun. ***Id.*** at 79. He testified that "[i]t was several of us [sic]" who showed the detectives the bullet hole. ***Id.*** at 95.

The Commonwealth also presented the testimony of Amy's neighbor,

Amy's mother, and the police officer who responded to the call about a gunshot at the house. Pertinently, Amy's mother, Bertha Brown testified that she lived on the same block as Amy and that on June 10, 2015, Bertha was standing on the front steps of her home. *Id.* at 100, 107. Appellant "came around the corner with his hands in his" waistband and told Bertha that "if anybody tell the cops his name[,] he was going to . . . shoot [Bertha's] house up and . . . kill [her] grandson and granddaughter." *Id.* at 100. Bertha called the police. *Id.* at 105.

At trial, Appellant testified in his own defense. He stated that previously, he frequently gave money to his wife Shantell, Amy, their mother, and family members for furniture, electronics, food, and other items. *Id.* at 145. However, when Appellant stopped giving them money, arguments ensued. *Id.* Appellant also stated that on the day before the incident, a woman arrived at the house and told Amy's 11-year old daughter that she was pregnant with Appellant's child and wanted to talk with Shantell. *Id.* at 142-143. Amy was "offended" by this incident. *Id.* Appellant testified that on the day of the incident, he merely had a verbal argument with Amy about money and with his wife about his extramarital affairs. *Id.* at 156. Appellant denied having a gun, and testified that instead, after the argument, he was packing his things to leave when his brother called him and asked for a ride. *Id.* at 146, 156. While driving to pick up his brother, Appellant received a text message from his mother stating that his parole officer wanted to talk with him. *Id.* at 157.

Appellant then called his parole officer and turned himself in to him. *Id.* at 158. Appellant's mother, Martha Beener, also testified. She stated that, *inter alia*, Appellant and Amy had many disagreements, including disputes over money. *Id.* at 128.

The trial court found Appellant not guilty of simple assault or aggravated assault, but found him guilty of the remaining offenses. On March 20, 2017, the trial court sentenced Appellant as follows: (1) 5 to 10 years of imprisonment for persons not to possess firearms; (2) a concurrent 5 to 10 years of imprisonment for intimidation of a witness; (3) a concurrent 3 years and 6 months to 7 years of imprisonment for possessing a firearm without a license; and (4) concurrent terms of 5 years of probation for PIC, carrying a firearm in public in Philadelphia, and each of the two counts of terroristic threats. Appellant's aggregate sentence was thus 5 to 10 years of imprisonment and a consecutive 5 years' probation.

Appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence for all of his convictions. The trial court denied the motion on May 1, 2017, and Appellant filed a timely notice of appeal. The court ordered him to file a Pennsylvania Rule of Appellate Procedure 1925 statement. Appellant did not initially file a statement, but after receiving permission to file one *nunc pro tunc*, he filed a statement on July 23, 2017. The statement challenged the sufficiency and weight of the evidence as follows:

a. The evidence was insufficient to convict [Appellant] of firearms charges as there was no physical evidence recovered and the evidence of a gun being discharged was inadequate.

b. The evidence was insufficient to convict [Appellant] of Witness Intimidation.

c. The trial court abused its discretion as the verdict was against the weight of the evidence presented by the Commonwealth. There were considerable inconsistencies in the testimony of witnesses and no physical evidence to corroborate. The Court disbelieved significant portions of Commonwealth testimony but selectively credited other portions.

d. Verdict of Not Guilty on assault charges is logically inconsistent with a verdict of Guilty on the firearms charges, terroristic threats, PIC, and Witness Intimidation. The Court abused its discretion by believing certain aspects of the witness's testimony to support a verdict on [some counts] but discrediting testimony as it pertained to [the charges of simple assault and aggravated assault].

1925(b) Statement, 7/23/17, at 1-2.

In his brief, Appellant raises three issues:

1.     Whether Appellant's conviction of the charge of Witness Intimidation was supported by sufficient evidence?

2.     Whether Appellant's conviction of Possession of an Instrument of Crime and Violations of the Uniform Firearms Act were supported by sufficient evidence?

3.     Whether Appellant's convictions for Witness Intimidation, Violations of the Uniform Firearms Act, Terroristic Threats and Possession of an Instrument of Crime were against the weight of evidence?

Appellant's Brief at 4 (reordered for ease of review).

Appellant's first two issues challenge the sufficiency of the evidence relating to his convictions of witness intimidation, PIC, and violations of the

Uniform Firearms Act.[4]   We conclude that Appellant has failed to preserve these claims for appellate review.

With respect to his witness intimidation conviction, although Appellant's Rule 1925(b) statement averred, "The evidence was insufficient to convict [Appellant] of Witness Intimidation," the statement, as the trial court pointed out, did not identify any element of that offense that was allegedly not established.  **See** Trial Court Opinion, 8/16/17, at 3.  Accordingly, Appellant has waived his challenge to the sufficiency of the evidence for that offense. **See Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (when challenging the sufficiency of the evidence, an appellant's Rule "1925 statement must 'specify the element . . . upon which the evidence was insufficient' in order to preserve the issue for appeal").

Furthermore, we observe that although Appellant purports to challenge the sufficiency of the evidence as to his convictions of PIC, persons not to possess a firearm, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia, the argument section of his brief does not refer specifically to any of these offenses nor does it address any of the elements of these crimes.  Consequently, Appellant has also waived these

---

[4] We remind Appellant's counsel: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein . . . ."  **See** Pa.R.A.P. 2119(a).

claims.[5]  ***See Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (claim of insufficient evidence for multiple convictions was underdeveloped, did not set forth elements of the crimes, did not argue which specific element was not met, and thus was waived); ***Commonwealth v. Plante***, 914 A.2d 916, 924 (Pa. Super. 2006) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review.").  Therefore, Appellant's challenges to the sufficiency of the evidence must fail.

Next, Appellant argues that his verdict was against the weight of the evidence.  Specifically, he asserts that the Commonwealth's witnesses were not credible and that the verdicts were inconsistent.

This Court has stated,

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited.  Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.  "Moreover, where the trial court has ruled

---

5  Even if Appellant had not waived these arguments, they are nonetheless meritless.  Appellant avers:  "There was simply no proof beyond the words of the complainants to demonstrate beyond a reasonable doubt that [he] had a firearm," and that no physical evidence was recovered.  Appellant's Brief at 11.  To the extent we construe these arguments as challenges to the element of possessing a firearm with respect to the PIC and the above firearms offenses, no relief is due.  Appellant concedes that the Commonwealth presented testimony that he possessed and fired a firearm.  The remainder of his argument goes only to the weight, and not the sufficiency, of the evidence.  ***See Gibbs***, 981 A.2d at 281-282 ("An argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence.").

on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim."

*Gibbs*, 981 A.2d at 282 (citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Id.* (citation omitted).

Appellant asserts that the testimony of the Commonwealth's witnesses gave rise to reasonable doubt. *Id.* at 10. In support, Appellant points out that Amy's and Markeith's testimony were inconsistent as to whether Appellant was already home when Amy arrived, what Appellant said after the alleged gunshot, and who identified the bullet hole in the floor. *Id.* at 11. Appellant also avers that, where the trial court found him not guilty of simple or aggravated assault, it was "deeply inconsistent for the trial court to credit" some, but not other, testimony by Amy, and thus the verdict shocks one's sense of justice. *Id.* at 12-13.

Here, the trial "court, sitting as fact-finder, found not only that the eyewitness accounts corroborated one another, but also that the physical evidence – the bullet hole in [Amy's] floor corroborated those accounts." Trial Court Opinion, 8/16/17, at 5. The trial court was free to credit any part of the Commonwealth witnesses' testimony, and we do not disturb its verdict based on Appellant's challenge to witness credibility. *See Gibbs*, 981 A.2d at 282.

We further hold no relief is due on Appellant's claim that the verdict was

improper because it was inconsistent. An inconsistent verdict may "stand so long as the evidence is sufficient to support the conviction." **Commonwealth v. Miller**, 35 A.3d 1206, 1208 (Pa. 2012). "[A] criminal defendant convicted . . . on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." **Id.** at 1208-1209 (citation omitted).

The trial court reasoned:

[T]he verdicts were not inconsistent. The court's finding that [Appellant] did not have the *mens rea* for simple or aggravated assault at the time he fired the gun into [the] floor did not preclude it from finding that the Commonwealth had proven the elements of the remaining offenses beyond a reasonable doubt.

Trial Court Opinion, 2/5/18, at 5, **citing Miller**, 35 A.3d at 1208. We agree. Furthermore, we reiterate that the trial court was free to believe all, none, or part of Amy's testimony. **See Gibbs**, 981 A.2d at 282. Accordingly, the trial court did not abuse its discretion in denying Appellant's weight claim below, and we affirm the judgment of sentence. **See id.**

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/17/2018*

- 10 -