J-S71023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
                                 :
          v.                     :
                                 :
                                 :
                                 :
MARLON GLENN                     :
                                 :
          Appellant              :     No. 2438 EDA 2018

Appeal from the Judgment of Sentence Entered March 16, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004532-2017

BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **Filed: February 7, 2020**


Marlon Glenn (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of voluntary manslaughter, possession of an instrument of crime (PIC), firearms not to be carried without a license, carrying firearms on a public street or public property in Philadelphia, and two counts of theft by unlawful taking.[1]  We affirm.

On May 30, 2017, Appellant was charged in connection with the murder of Ramone Anthony Smith (Smith).  **See** Trial Court Opinion, 11/16/18, at 2-3.  The trial court recounted the evidence as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia police officers Andrew Miller, Terrance Lewis, Terry Tull, Earl Tilghman, and Kelly Walker, Philadelphia police detectives Joseph Centeno and James Burke, Philadelphia

---

[1] 18 Pa.C.S.A. §§ 2503(a)(1), 907(a), 6106(a)(1), 6108, and 3921(a).

associate medical examiner Dr. Lindsay Simon, and Lerin Gilliard, David Westin, Von Williams, Margie Lazenbury, Carole Moore, Dennis Moore Jr., and Cameron Davis. [Appellant] presented no evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

After work on Friday, March 3, 2017, Ramone Anthony Smith, the victim, drove his co-worker, Lerin Gilliard, to her home, but first stopped to pick up [Appellant]. After dropping off Gilliard, Smith and [Appellant] arrived at Smith's house on the 4800 block of Bouvier Street in Philadelphia. Smith and [Appellant] had been friends for several months and were also engaged in a sexual relationship, which had been limited to Smith performing oral sex on [Appellant]. [Appellant], however, did not identify as homosexual, and he lived and shared a bedroom with a woman.

Sometime after 9:00 p.m., [Appellant] was in Smith's basement working out. Smith walked over to [Appellant] and began to straddle him, which made [Appellant] upset. The two men got into a struggle during which [Appellant] grabbed Smith's gun from a holster on Smith. The men proceeded upstairs into the kitchen, where [Appellant], using Smith's gun, shot Smith one time in the back of the head.

Because Smith did not answer his phone after 9 p.m. on Friday, all day Saturday, and Sunday morning, Smith's friends, Cameron Davis and David Westin, grew concerned because they typically spoke with him every day. On Sunday, March 5, 2017, Davis and Westin went to Smith's house and noticed that Smith's Toyota Camry was missing. The friends entered Smith's house using a spare key that Smith had given them and they discovered the house was in "complete disarray" and looked "ransacked." In the living room, couch pillows were on the floor, and Smith's television was missing. In the dining room, papers were scattered across the table. In the middle upstairs bedroom, which Smith had converted to a walk-in closet because he loved to shop and had a large collection of wallets, watches and shoes, many of Smith's things were gone. Westin found Smith's dead body in the kitchen with a pool of dry blood surrounding his head. The medical examiner determined that the cause of death was a gunshot wound to the back of the head.

Philadelphia police detectives then conducted an investigation of the shooting. When police arrived at Smith's house, Davis and Westin gave detectives a photo of [Appellant], whom they believed was at Smith's house on that Friday night. Police were able to identify [Appellant] and discovered his last known address was the 200 block of North 61st Street. Officers also recovered Smith's FitBit and cell phone, and an analysis of the FitBit showed that Smith stopped moving at 9:42 p.m. on March 3, 2017.

Officers also learned of Smith's car's vehicle identification number [] and placed it in stolen status. The next day, March 6, 2017, police located Smith's car on the 100 block of North Robinson Street, which is located approximately a block and a half away from [Appellant's] residence. Shortly after initiating surveillance on the vehicle, [Appellant] arrived. Wearing blue rubber surgical gloves, [Appellant] connected jumper cables to Smith's car. He also went inside the front of Smith's vehicle. Officers then approached [Appellant], handcuffed him, and transported him to the Homicide Unit on 8th and Race Streets.

At Homicide, [Appellant] was placed in an interview room and waived his **Miranda**[2] rights. However, he later requested a lawyer, so detectives immediately ended their questioning. The next day, March 7, 2017, [Appellant] asked to resume speaking with Detective James Burns and again waived his **Miranda** rights. During questioning [Appellant] wrote "private" on a piece of paper, crossed it out after Detective Burns saw it, and then asked to use the bathroom. While Detective Burns and [Appellant] were out of the interview room, [Appellant] confessed to killing Smith and told him the events that led to Smith's death. Although [Appellant] indicated that he would repeat his confession on camera, [Appellant] refused to do so once he and Detective Burns re-entered the interview room. Instead, he claimed that what he told Detective Burns was merely a hypothetical.

While [Appellant] was at the Homicide Unit, detectives executed a search warrant on [Appellant's] residence, and recovered items, including wallets, watches and shoes, which were later identified by Davis and Williams as items belonging to Smith. In addition, after police cleared the crime scene, Von

---

[2] **Miranda v. Arizona**, 86 S.Ct. 1602 (U.S. 1966).

Williams, Smith's close family friend, went to Smith's house to clean the residence. On a shelf in the kitchen near where Smith's body was found, Williams found a 9 [millimeter] Ruger fired cartridge casing. Police recovered Smith's gun sometime in May 2017, when it was confiscated from Kyvon Jenkins in Abington Township. Jenkins lived in the West Philadelphia area, approximately one mile away from where [Appellant] resided. Ballistics testing showed that the fired cartridge casing found near Smith's body matched Smith's gun.

Trial Court Opinion, 11/16/18, at 2-5 (citations to notes of testimony omitted, footnote added).

On December 27, 2017, a jury rendered their guilty verdicts. On March 16, 2018, the trial court sentenced Appellant to an aggregate 21 to 42 years of incarceration. Appellant filed a timely post-sentence motion, which the trial court denied on July 10, 2018. Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises two issues for our review:

1. Is [] Appellant entitled to an arrest of judgment on the verdict of voluntary manslaughter, PIC and VUFA, where the verdict was not supported by sufficient evidence?

2. Did the Trial Court err in denying Post Sentence Motion for New Trial and is [] Appellant entitled to a new trial as the verdict was not supported by the greater weight of the evidence?

Appellant's Brief at 3.[3]

---

[3] Appellant's Rule 1925(b) statement raises an additional discretionary aspects of sentencing claim. **See** Rule 1925(b) Statement, 8/29/18, at 2. However, because Appellant abandoned this claim in his brief, we will not address it. **See** Appellant's Brief at 3; **see also Commonwealth v. Briggs**,

Initially, we observe that although Appellant purports to challenge the sufficiency of the evidence as to his convictions of PIC, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia, the argument section of his brief does not refer specifically to any of these offenses nor does Appellant address any elements of those crimes. *See* Appellant's Brief at 9-12. Consequently, Appellant has waived these claims. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (claim of insufficient evidence for multiple convictions was underdeveloped, did not set forth elements of the crimes, did not argue which specific element was not met, and was thus waived); *Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review."). We therefore limit our review to Appellant's challenge to the sufficiency of the evidence as it relates to his voluntary manslaughter conviction.

Our standard of review is well-settled:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, [ ] 744 A.2d 745, 751 ([Pa.] 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt."

_____

12 A.3d 291, 310 n.19 (Pa. 2011), *cert. denied*, 132 S.Ct. 267 (2011) (refusing to address claim appellant raised with trial court but subsequently abandoned in brief).

*Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005).

Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.*; *see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (*citing*

*Commonwealth v. Pettyjohn*, 64 A.3d 1072 (Pa. Super. 2013)).

Appellant argues that the evidence was insufficient to support his conviction of voluntary manslaughter because "no one saw" him shoot Smith. Appellant's Brief at 11. Appellant asserts that the Commonwealth failed to prove that he "fired the shot that entered the victim's head, which killed him," *id.* at 9, and claims "[t]here is nothing in the record which would refute the

possibility of a third party having entered the home, shot the victim and retreated to safety." *Id.* at 10.

The Pennsylvania Crimes Code provides that voluntary manslaughter occurs: (1) where the defendant acted under a sudden and intense passion resulting from a serious provocation; or (2) where the defendant knowingly and intentionally killed an individual under the unreasonable belief that the killing was justified. 18 Pa.C.S.A. § 2503(a), (b).

Appellant's sufficiency argument is belied by the record. After reviewing the notes of testimony, we have determined that The Honorable Glenn B. Bronson, sitting as the trial court, has capably and accurately addressed Appellant's sufficiency argument. *See* Trial Court Opinion, 11/16/18, at 5-9; *see also id.* at 5 ("All of this evidence demonstrated that [Appellant], after a struggle, pursued Smith with a gun and shot him in the head with the intent to kill him."). We therefore adopt the trial court's analysis as our own in disposing of this issue.

In his second issue, Appellant argues that the guilty verdicts of voluntary manslaughter and "weapons offenses" were against the weight of the evidence.[4] Appellant's Brief at 13.

We begin with our standard of review:

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's

---

[4] Appellant properly preserved this issue in compliance with Pennsylvania Rule of Criminal Procedure 607 by raising it with the trial court in a post-sentence motion. Appellant's Motion for New Trial, 3/22/18, at 1-2.

decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Id.* (citation omitted). To allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (citation omitted).

Instantly, Appellant's weight argument consists of two cursory paragraphs in which he states: "The Commonwealth did not prove that [] Appellant used any weapon or shot the victim. The argument is not complicated; simply put, the Commonwealth failed to prove that it was the Appellant who shot and killed the victim." Appellant's Brief at 13. Appellant's argument invokes the elements of voluntary manslaughter, and thus revisits the sufficiency of the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (explaining the differences between sufficiency and weight of the evidence claims); *see also Commonwealth v. Sexton*, --- A.3d ----, 2019 WL 5540999, *5 (Pa. Super. 2019) ("A motion for a new trial

on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict."). Appellant has failed to develop his challenge to the weight of the evidence, and therefore he is not entitled to relief. **See id.** at *6 ("It is Appellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court that there were errors below, and convince us relief is due because of those errors.") (citation omitted).

In sum, there is no merit to the issues Appellant raises on appeal. The parties shall attach a copy of the trial court's November 16, 2018 opinion in the event of further proceedings relevant to this matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/20

FILED

2018 NOV 16 PM 2: 41

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0004532-2017 |
| | : | |
| v. | : | CP-51-CR-0004532-2017 Comm. v Glenn, Marlon Opinion |
| | : | |
| MARLON GLENN | : | 8190679531 |

OPINION

BRONSON, J.                                            November 16, 2018

On December 27, 2017, following a jury trial before this Court, defendant Marlon Glenn was convicted of one count each of voluntary manslaughter (18 Pa.C.S. § 2503(a)(1)), carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)), possession of an instrument of crime ("PIC") (18 Pa.C.S. § 907(a)), carrying firearms on public streets or public property in Philadelphia (18 Pa.C.S. § 6108), and two counts of theft by unlawful taking (18 Pa.C.S. § 3921(a)). On March 16, 2016, the court imposed consecutive terms of 10 to 20 years of incarceration for the voluntary manslaughter, 3 ½ to 7 years of incarceration for carrying a firearm without a license, 2 ½ to 5 years incarceration for carrying firearms on a public street or public property in Philadelphia, 2 ½ to 5 years incarceration for PIC, and 2 ½ to 5 years of incarceration for the theft by unlawful taking charge, for an aggregate sentence of 21 to 42 years incarceration.[1] On March 22, 2018, defendant filed post-sentence motions, which the Court denied on July 10, 2018.

Defendant has now appealed from the judgment of sentence entered by the Court on the grounds that: 1) the evidence was legally insufficient to sustain the verdict; 2) the verdict was

---

[1] Due to merger, no sentence was entered on the conviction for the second count of theft by unlawful taking.

1

against the weight of the evidence; and 3) the Court abused its discretion in imposing an excessive sentence. Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b) ("Statement of Matters") at ¶¶ 1-3. For the reasons set forth below, defendant's claims are without merit and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia police officers Andrew Miller, Terrance Lewis, Terry Tull, Earl Tilghman, and Kelly Walker, Philadelphia police detectives Joseph Centeno and James Burke, Philadelphia associate medical examiner Dr. Lindsay Simon, and Lerin Gilliard, David Westin, Von Williams, Margie Lazenbury, Carole Moore, Dennis Moore Jr., and Cameron Davis. Defendant presented no evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

After work on Friday, March 3, 2017, Ramone Anthony Smith, the victim, drove his co-worker, Lerin Gilliard, to her home, but first stopped to pick up defendant. N.T. 12/20/17 at 85. After dropping off Gilliard, Smith and defendant arrived at Smith's house on the 4800 block of Bouvier Street in Philadelphia. N.T. 12/20/17 at 145. Smith and defendant had been friends for several months and were also engaged in a sexual relationship, which had been limited to Smith performing oral sex on defendant. N.T. 12/20/17 at 107-09; N.T. 12/22/17 at 38. Defendant, however, did not identify as homosexual, and he lived and shared a bedroom with a woman. N.T. 12/21/17 at 6-7, 62.

Sometime after 9:00 p.m., defendant was in Smith's basement working out. N.T. 12/22/17 at 38. Smith walked over to defendant and began to straddle him, which made defendant upset. *Id.* The two men got into a struggle during which defendant grabbed Smith's

2

gun from a holster on Smith. *Id.* The men proceeded upstairs into the kitchen, where defendant, using Smith's gun, shot Smith one time in the back of the head. N.T. 12/22/17 at 37-38.

Because Smith did not answer his phone after 9 p.m. on Friday, all day Saturday, and Sunday morning, Smith's friends, Cameron Davis and David Westin, grew concerned because they typically spoke with him every day. N.T. 12/20/17 at 105-06; N.T. 12/21/17 at 64-65. On Sunday, March 5, 2017, Davis and Westin went to Smith's house and noticed that Smith's Toyota Camry was missing. N.T. 12/20/17 at 109; N.T. 12/21/17 at 66-67. The friends entered Smith's house using a spare key that Smith had given them and they discovered the house was in "complete disarray" and looked "ransacked." N.T. 12/20/17 at 110-11; N.T. 12/21/17 at 67. In the living room, couch pillows were on the floor, and Smith's television was missing. N.T. 12/20/17 at 111, 117. In the dining room, papers were scattered across the table. N.T. 12/20/17 at 111, 117-18. In the middle upstairs bedroom, which Smith had converted to a walk-in closet because he loved to shop and had a large collection of wallets, watches and shoes, many of Smith's things were gone. N.T. 12/20/17 at 227-28. Westin found Smith's dead body in the kitchen with a pool of dry blood surrounding his head. N.T. 12/20/17 at 111-12, 146. The medical examiner determined that the cause of death was a gunshot wound to the back of the head. N.T. 12/20/17 at 189.

Philadelphia police detectives then conducted an investigation of the shooting. When police arrived at Smith's house, Davis and Westin gave detectives a photo of defendant, whom they believed was at Smith's house on that Friday night. N.T. 12/21/17 at 113. Police were able to identify defendant and discovered his last known address was the 200 block of North 61st Street. N.T. 12/21/17 at 116. Officers also recovered Smith's FitBit and cell phone, and an

3

analysis of the FitBit showed that Smith stopped moving at 9:42 p.m. on March 3, 2017. N.T. 12/21/17 at 111, 113; N.T. 12/26/17 at 13.

Officers also learned of Smith's car's vehicle identification number ("VIN") and placed it in stolen status. N.T. 12/20/17 at 149; N.T. 12/21/17 at 114-15. The next day, March 6, 2017, police located Smith's car on the 100 block of North Robinson Street, which is located approximately a block and a half away from defendant's residence. N.T. 12/21/17 at 85, 115. Shortly after initiating surveillance on the vehicle, defendant arrived. N.T. 12/21/17 at 83, 115. Wearing blue rubber surgical gloves, defendant connected jumper cables to Smith's car. N.T. 12/21/17 at 83-84. He also went inside the front of Smith's vehicle. *Id.* Officers then approached defendant, handcuffed him, and transported him to the Homicide Unit on 8th and Race Streets. N.T. 12/21/17 at 83-84, 118.

At Homicide, defendant was placed in an interview room and waived his *Miranda* rights. N.T. 12/21/17 at 19. However, he later requested a lawyer, so detectives immediately ended their questioning. N.T. 12/22/17 at 12-13. The next day, March 7, 2017, defendant asked to resume speaking with Detective James Burns and again waived his *Miranda* rights. N.T. 12/22/17 at 13, 25. During questioning, defendant wrote "private" on a piece of paper, crossed it out after Detective Burns saw it, and then asked to use the bathroom. N.T. 12/22/17 at 33, 36. While Detective Burns and defendant were out of the interview room, defendant confessed to killing Smith and told him the events that led to Smith's death. N.T. 12/22/17 at 37-39. Although defendant indicated that he would repeat his confession on camera, defendant refused to do so once he and Detective Burns re-entered the interview room. N.T. 12/26/17 at 56-57. Instead, he claimed that what he told Detective Burns was merely a hypothetical. *Id.*

4

While defendant was at the Homicide Unit, detectives executed a search warrant on defendant's residence, and recovered items, including wallets, watches and shoes, which were later identified by Davis and Williams as items belonging to Smith. N.T. 12/20/17 at 232-35; 12/22/17 at 12, 16-17. In addition, after police cleared the crime scene, Von Williams, Smith's close family friend, went to Smith's house to clean the residence. N.T. 12/20/17 at 228. On a shelf in the kitchen near where Smith's body was found, Williams found a 9 mm Ruger fired cartridge casing. N.T. 12/20/17 at 229; N.T. 12/22/17 at 18. Police recovered Smith's gun sometime in May 2017, when it was confiscated from Kyvon Jenkins in Abington Township. N.T. 12/26/17 at 18-19. Jenkins lived in the West Philadelphia area, approximately one mile away from where defendant resided. N.T. 12/26/17 at 19-20. Ballistics testing showed that the fired cartridge casing found near Smith's body matched Smith's gun. N.T. 12/26/17 at 88-90.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Defendant first claims that "the evidence was insufficient to support the verdict which found the defendant guilty of Voluntary Manslaughter, Possession of an Instrument of Crime (PIC), Theft-F3, and violation of the Uniform Firearms Act (VUFA)-- §6106 and §6108." Specifically, defendant claims that "the evidence was grossly unreliable and would lead to a verdict being based on surmise and conjecture, all in violation of *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993)." Statement of Matters at ¶ 1. This claim is without merit.

In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, could enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Walsh*, 36 A.3d 613, 618 (Pa.

5

Super. 2012). In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *Id.* Finally, "[i]f the record contains support for the verdict, it may not be disturbed." *Commonwealth v. Adams*, 882 A.2d 496, 499 (Pa. Super. 2005) (quoting *Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2000), *app. denied*, 782 A.2d 542 (Pa. 2001)).

### 1. Voluntary Manslaughter

"The law provides for a conviction of voluntary manslaughter under two different circumstances. A person is guilty of voluntary manslaughter if, either he acted under a sudden and intense passion resulting from a serious provocation or if he 'knowingly and intentionally kills an individual' under the unreasonable belief that the killing was justified." *Commonwealth v. Weston*, 749 A.2d 458, 462 (Pa. 2000) (citing 18 Pa.C.S. § 2503(a)-(b)). In the instant case, only the "sudden and intense passion" version of voluntary manslaughter was submitted to the jury. 18 Pa.C.S. § 2503(a); *see* N.T. 12/26/17 at 194-96. For either version, "a conviction for voluntary manslaughter will be upheld as long as the evidence is sufficient to show that the elements of murder were present." *Commonwealth v. Harner*, 546 A.2d 1241, 1242 (Pa. Super. 1988), *app. denied* 564 A.2d 915 (Pa. 1989). "[W]here the evidence would be sufficient to support a conviction of murder, the return of a verdict of voluntary manslaughter is strictly within the jury's prerogative ...." *Id.* (quoting *Commonwealth v. Hoffman*, 266 A.2d 726, 731 (Pa. 1970)). Accordingly, the Court first looks to whether the evidence was sufficient to support a first degree murder conviction.

6

"The evidence is sufficient to establish first-degree murder where the Commonwealth proves that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with the specific intent to kill." *Commonwealth v. Edwards*, 903 A.2d 1139, 1146 (Pa. 2006). The specific intent to kill may be inferred from a defendant's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa. Super. 2005).

Here, there was ample evidence to establish that defendant was guilty of first degree murder. First, defendant admitted to the Detective James Burns that he had shot Smith. N.T. 12/22/17 at 36-38. According to Burns, defendant stated that while he was working out in Smith's basement, Smith came over and straddled defendant, which upset defendant and started a struggle between them. N.T. 12/22/17 at 38. Defendant stated to Burns that during that struggle, defendant grabbed Smith's gun, which was holstered on Smith, and then defendant and Smith went upstairs into the kitchen where defendant shot him. N.T. 12/22/17 at 38-39. Although defendant made these admissions to Burns during a break from a video-taped interview, and defendant refused to repeat his inculpatory admissions on video, Burns gave credible testimony regarding the admissions, which was corroborated by notes of the conversation that Burns had prepared later that night and the next day. N.T. 12/22/17 at 41-42.

In addition, Detective Burns had testified that, while questioning defendant, defendant wrote the word "private" on a piece of paper and then crossed it out and asked for a break right before making his inculpatory statements. N.T. 12/22/17 at 33, 36. The paper with the crossed out word "private" was admitted into evidence and offered additional compelling corroboration for Detective Burns' testimony.

7

Moreover, defendant's confession to Detective Burns was strongly corroborated by other evidence. First, there was substantial evidence that defendant and Smith were together at the time of Smith's death. The evidence established that Smith died on Friday evening, March 3, 2017. This was proven through an analysis of Smith's FitBit, which showed that he stopped moving at 9:42 p.m. on that date, N.T. 12/26/17 at 13, and through testimony that Smith stopped answering text messages and phone calls around that time. N.T. 12/21/17 at 64. Along with the evidence regarding time of death, the Commonwealth produced several witnesses who testified that defendant and Smith were together at that time. N.T. 12/20/17 at 104; N.T. 12/21/17 at 25, 40, 63. Notably, at 8:53 p.m., less than one hour before the killing, Smith texted his friend, Cameron Davis, that defendant was "getting on [his] nerves" at that time. N.T. 12/22/17 at 63-64.

In addition, evidence surfaced months after the confession offering additional compelling corroboration to the confession. In particular, defendant had told Burns during the confession not only that the murder weapon was Smith's own gun, but that the gun was disposed of in "a drug house." N.T. 12/22/17 at 37. In May of 2017, about two months after the confession, Smith's gun was confiscated from Kyvon Jenkins in Abington Township. N.T. 12/26/17 at 18-19. According to Detective Burns, Jenkins lived in the West Philadelphia area, approximately one mile away from where defendant resided. N.T. 12/26/17 at 19-20. Ballistics tests matched that gun to the fired cartridge casing found in Smith's home after the murder. N.T. 12/26/17 at 88-90. Because only the killer could have known what weapon was used to murder Smith at the time that defendant gave his confession, the evidence regarding the gun was highly probative proof that Detective Burns truthfully recounted defendant's confession.

8

Finally, the medical examiner testified that Smith had a single gunshot wound to the back of his head, a vital part of his body, killing him. N.T. 12/20/17 at 183. All of this evidence demonstrated that defendant, after a struggle, pursued Smith with a gun and shot him in the head with intent to kill him. Because such evidence would have been sufficient to support a first-degree murder conviction, the evidence was legally sufficient to support the voluntary manslaughter conviction.

In his Statement of Errors, defendant's sole contention regarding the sufficiency of the evidence is that the evidence "was grossly unreliable and would lead to a verdict being based on surmise and conjecture, all in violation of *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993)." This claim is frivolous. In *Karkaria*, the defendant was charged with raping his step-sister, who was 14 years old at the time of the trial. 625 A.2d at 1167-68. The Commonwealth's case rested entirely on the credibility of the step-sister, whose testimony was "disturbingly vague," unsupported by any physical evidence, and left the record "riddled with critical inconsistencies." 625 A.2d at 1170-71. The evidence in the instant case, as described above, suffers from none of the infirmities present in *Karkaria*.

### 2. Theft by Unlawful Taking

A person is guilty of theft by unlawful taking "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Theft will be graded as a third degree felony "if the amount involved exceeds $2,000, or if the property stolen is an automobile . . . ." 18 Pa.C.S. § 3903(a.1).

Here, there was sufficient evidence for the jury to conclude that defendant took many of Smith's personal and confidential items after shooting him. First, David Westin testified that Smith's house looked like it had been "ransacked" on Sunday, March 5, 2017, when Westin

9

found Smith's dead body. N.T. 12/20/17 at 111. Cameron Davis testified that the house was in "complete disarray." N.T. 12/21/17 at 67. Davis, Westin, and Von Williams also testified that Smith had a large collection of wallets, watches, and shoes that he kept in his middle upstairs bedroom. N.T. 12/20/17 at 114-15, 227-28; N.T. 12/21/17 at 53. The prosecution introduced pictures of the condition of Smith's house after his body was found in which many of Smith's shoes, wallets, and watches were gone from the middle bedroom. *See* N.T. 12/20/17 at 120. In addition, Smith's television was missing from his living room, and papers were scattered across his dining room table. N.T. 12/20/17 at 111, 117-18.

Moreover, Margie Lazenbury, the woman with whom defendant shared a bedroom, testified that when she woke up on the morning of Saturday, March 4, 2017, she saw clothing, shoes, and bags in her room that were not present the previous night. N.T. 12/21/17 at 8-9. After police executed a search warrant on defendant's residence, police recovered items, including wallets, watches and shoes. N.T. 12/20/17 at 209-214. Both prior to trial and at trial, Williams and Davis identified some of these items as belonging to Smith. N.T. 12/20/17 at 231-35; N.T. 12/21/17 at 70-74. In addition, Detective Joseph Centeno testified that police found a nylon bag at defendant's residence that contained numerous items of paperwork, mail and identification bearing Smith's name. N.T. 12/20/17 at 211.

Further, there was ample evidence that defendant stole Smith's Toyota Camry. Detective Burns testified that police located Smith's car approximately a block and a half away from defendant's residence. N.T. 12/21/17. Then, while police were surveilling the vehicle on March 6, 2017, one day after Smith's body was found, defendant was seen wearing blue latex gloves and connecting jumper cables to Smith's car and going through paperwork inside the car. N.T. 12/21/17 at 83-84. Finally, five witnesses, Westin, Davis, Williams, Lerin Gilliard, Carole

10

Moore, and Dennis Moore Jr., all of whom were close with Smith, testified that Smith rarely let anyone borrow his car and never let anyone borrow his car for a few days. N.T. 12/20/17 at 86, 109-10, 223-24; N.T. 12/21/17 at 27, 39.

Accordingly, the evidence established that defendant was guilty of theft by unlawful taking as a felony of the third degree.

### 3. PIC

To sustain a conviction for PIC, the Commonwealth must establish that defendant "possesse[d] any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An "instrument of crime" is defined as "(1) [a]nything specially made or specially adapted for criminal use....[or] (2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d).

Here, the evidence described above established that defendant intentionally killed Smith with Smith's own gun. Accordingly, the Commonwealth proved that defendant possessed the gun for a criminal purpose, used it to commit a crime, and possessed it under circumstances not appropriate for its lawful use. Therefore, the evidence established that defendant was guilty of PIC.

### 4. Carrying a Firearm without a License

A person violates section 6106 of the Uniform Firearms Act if he "carries a firearm in any vehicle or . . . carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license." 18 Pa.C.S. § 6106(a)(1). "Firearm" is defined by section 6102 to include "[a]ny pistol or revolver with a barrel length less than 15 inches." 18 Pa. C.S. § 6102. In order to fall under the purview of section 6106, the object must also either be operable or the defendant must have under his control the means to

11

make the object operable. *See Commonwealth v. Gainer*, 7 A.3d 291, 297 (Pa. Super. 2010), *app. denied*, 23 A.3d 1055 (Pa. 2011).

Here, the parties stipulated that defendant did not have a license to carry a firearm. N.T. 12/26/17 at 71. In addition, the evidence described above established that defendant, after killing Smith, left the scene in Smith's car taking the gun and other stolen property with him. This was sufficient evidence for the jury to conclude that defendant was guilty of carrying a firearm without a license.

### 5. Carrying Firearms on Public Streets or Public Property in Philadelphia

A person violates section 6108 of the Uniform Firearms Act if he "carr[ies] a firearm, rifle or shotgun at any time upon the public streets or upon any public property in [Philadelphia]." 18 Pa.C.S. § 6108. Here, as stated above, the evidence established that defendant was in possession of Smith's gun on the streets of Philadelphia as he carried it away from Smith's residence in a stolen car. That was sufficient to prove that defendant was guilty of carrying a firearm on public streets or public property in Philadelphia.

### B. *Weight of the Evidence*

Defendant next claims that the verdict is against the weight of the evidence, specifically arguing that "[t]he Commonwealth's evidence did not prove that it was Defendant who shot and killed the victim and did not prove that the Defendant stole anything from the person or house of the victim." Statement of Matters at ¶ 2. This claim is without merit.

It is well-established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "'shock one's sense of justice.'" *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004), *app. denied*, 878 A.2d 864 (Pa. 2005) (quoting *Commonwealth v. Hunter*, 554 A.2d 550, 555) (Pa. Super. 1989)).

12

Moreover, credibility determinations are solely within the province of the fact-finder, and "[a]n appellate court cannot substitute its judgment for that of the finder of fact." *Commonwealth v. Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013) (internal quotation omitted). In considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, "appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.* (quoting *Shaffer*, 40 A.3d at 1253).

Here, as discussed above, the Commonwealth presented compelling evidence of defendant's guilt, including a confession and very strong corroborating evidence. This included very credible proof that defendant was the killer and that he stole numerous items from Smith after killing him. *See* pp. 7-10, above.

Accordingly, the evidence plainly established that defendant committed the crimes for which he was convicted. Because the evidence fully supported the verdicts, the Court did not abuse its discretion in denying defendant's motion for a new trial.

### C. *Abuse of Discretion at Sentencing*

Finally, defendant claims the following:

> [T]he Honorable Court abused its discretion at time of sentencing when it sentenced the defendant to an aggregate term of twenty-one (21) to forty-two (42) years incarceration. It was an abuse of discretion to sentence in the aggravated range and, under all of the facts of this case, and considering the Sentencing Guidelines, the undersigned, most respectfully, contends that the sentence imposed was unduly harsh.

Statement of Matters at ¶ 3. This claim is without merit.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1072 (Pa. Super. 1988), *app. denied*, 571 A.2d 379 (Pa. 1989); *see Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). The sentencing court

13

must consider the need to protect the public, the gravity of the offense in relation to the impact upon the victim and on the community, the rehabilitative needs of the defendant, and the Sentencing Guidelines. 42 Pa.C.S. § 9721(b); *see Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa. Super. 2005) (quoting *Commonwealth v. Monahan*, 860 A.2d 180, 185 (Pa. Super. 2004)). Where the sentence falls outside the Sentencing Guidelines, the sentence should be affirmed on appeal unless it is "unreasonable." 42 Pa.C.S. § 9781(c)(3); *see Commonwealth v. P.L.S.*, 894 A.2d 120, 130 (Pa. Super. 2006). "The sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community." *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002), *app. denied*, 820 A.2d 703 (Pa. 2003). The factual basis and reasons for the departure must be stated on the record. *Id.*

As to consecutive sentences, "[l]ong standing precedent of [the Superior] Court recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). Accordingly, the decision to sentence consecutively fails to raise a substantial question on appeal unless that decision "raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010), *app. denied*, 14 A.3d 825 (Pa. 2011). Therefore, an appellate court will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently 'unreasonable.'" *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010).

14

Here, while defendant's sentences on most of the charges were upward departures from the guidelines, the sentence was reasonable for the reasons explained by the Court in detail during the sentencing hearing.[2] In determining the appropriate sentence in this case, the Court explicitly considered the evidence adduced at trial and during the suppression hearing, the sentencing memoranda submitted by both sides, the sentencing guidelines, victim impact statements from Smith's family and friends, defendant's rehabilitative needs, the pre-sentence report, defendant's mental health evaluation, the need for the protection of the public, and the gravity of the offense in relation to the impact on the victim and on the community. N.T. 3/16/17 at 33-35. The Court stated that the killing defendant committed was not within the heartland of the typical voluntary manslaughter case and determined that there were aggravating circumstances that warranted deviating upwards from the guidelines and for imposing consecutive sentences. N.T. 3/16/17 at 35.

First, the Court observed that Smith had befriended defendant, helped him, and invited him as a guest in Smith's home, and yet defendant put a bullet in the back of Smith's head. N.T. 3/16/17 at 36. The Court also noted that in cases of heat of passion voluntary manslaughter, it is not typical to find a defendant who, after such a killing, takes the time to canvas the victim's house and steal his personal belongings and car, all while the victim lay dead nearby. N.T. 3/16/17 at 36-37. In addition, the Court noted that such behavior showed a hardness of heart not often seen in voluntary manslaughter cases. N.T. 3/16/17 at 36. The Court also stated that the consecutive sentences were necessary to achieve an aggregate sentence that was commensurate with the egregious misbehavior that led to the charges in this case. N.T. 3/16/17 at 37.

---

[2] The Court sentenced defendant to standard range sentences on the charges of carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)) and carrying a firearm on public streets or public property in Philadelphia (18 Pa.C.S. § 6108). The sentences on the charges of voluntary manslaughter (18 Pa.C.S. § 2503(a)(1)), PIC (18 Pa.C.S. § 907(a)), and theft by unlawful taking (18 Pa.C.S. § 3921(a)) were upward departures.

15

Accordingly, the record establishes that there were compelling reasons for the departure above the Guidelines and the consecutive sentences in this case. As a result, the sentence was reasonable and should not be disturbed.

### III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

Commonwealth v. Marlon Glenn          CP-51-CR-0004532-2017
Type of Order: 1925(a) Opinion

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

David Rudenstein, Esquire
9411 Evans Street
Philadelphia, PA 19115

Type of Service:      ( ) Personal (X) First Class Mail () Other, please specify:

**District Attorney:**

Lawrence Goode, Esquire
Interim Supervisor, Appeals Unit
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service      ( ) Personal () First Class Mail (X) Other, please specify: *Interoffice Mail*

**Additional Counsel/Party:**

Joseph D. Seletyn, Esquire
Prothonotary
Office of the Prothonotary – Superior Court
530 Walnut Street, Suite 315
Philadelphia, PA 19106

Type of Service:      ( ) Personal (X) First Class Mail ( ) Other, please specify:

**Dated: November 16, 2018**

*Thomas Smith*

Thomas R. Smith
Law Clerk to Hon. Glenn B. Bronson