J-S69039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DALE SAUNDERS | : | |
| | : | |
| Appellant | : | No. 497 MDA 2018 |

Appeal from the Judgment of Sentence February 15, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001310-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 26, 2018**

Dale Saunders (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of indecent assault,[1] unlawful contact with a minor,[2] and corruption of minors.[3]  After careful review, we affirm.

The trial court detailed the evidence presented at trial:

Shannon Peiffer testified that she is a mother of five children.  At the time of the October 24, 2017 trial, her two oldest were [Victim], a 12-year-old daughter, and [N.P.], a 10-year-old son. Ms. Peiffer separated from [the children's] father and she met [Appellant], who she began dating in 2008.  They started living together in Dauphin, and then moved in with Ms. Peiffer's parents at 26 Willow Street in Harrisburg.  Ms. Peiffer, [Appellant], [Victim][,] and [N.P.] lived there for approximately six months, after which they purchased a trailer in Middletown.  The four of

_____

[1]  18 Pa.C.S.A. § 3126(a)(7).

[2]  18 Pa.C.S.A. § 6318(a)(1).

[3]  18 Pa.C.S.A. § 6301(a)(1)(i).

them lived together in Middletown until Ms. Peiffer and [Appellant] broke up seven months later. They had lived together for a total of one and one-half years at that point. [Appellant] moved in with Ms. Peiffer's parents after the split and Ms. Peiffer stayed in the trailer.

Ms. Peiffer testified that [Victim] was three and [N.P.] was one when she and [Appellant] began dating, and [Appellant] took on a fatherly role in his relationship with the children. She and [Appellant] had a good relationship after the break-up and stayed very close for the sake of the children. There was no animosity between them. The kids did not have a good relationship with their biological dad and looked to [Appellant] as their father. [Appellant] eventually moved out of Ms. Peiffer's parents' home and moved into an apartment two houses down from them. The apartment was above a house, with one bedroom, a kitchen, a living room, and a bathroom.

[Appellant] still had contact with [Victim] and [N.P.], and there were occasions when they would stay overnight with him. Ms. Peiffer had not observed any problems with [Appellant's] interactions with [Victim]. Ms. Peiffer did recall an occasion when [Victim] and [N.P.] spent the night at [Appellant's] place around Christmas time in 2012. [Appellant] had sent Ms. Peiffer a message telling her that he had gifts for the kids and asked to have them overnight. Ms. Peiffer and the kids were fine with that, and Ms. Peiffer transported them to and from the home. [Victim] did not say anything to Ms. Peiffer about any problems the night they stayed there. [Appellant] did not live at that location much longer after that visit; he relocated to the Mechanicsburg area and [Victim] and [N.P.] did not visit him at that location.

Ms. Peiffer testified that when [Victim] was in fifth grade, in December of 2015, she had a conversation with her about "good touch/bad touch." The conversation was prompted by [Victim's] request to go to a male teacher's house with her classmates, and Ms. Peiffer had expressed concern. Ms. Peiffer told [Victim] that men can do inappropriate things to little girls, like touching them in places that would not be okay. Ms. Peiffer testified that the next day, [Victim] approached her and said, "Do you remember what we were talking about yesterday?" Ms. Peiffer replied, "About the teacher, about going to his home?" [Victim] responded yes, and told her mom she had to tell her something. Ms. Peiffer recalled [Victim] crying at this point and said, "Well [Appellant]

- 2 -

did touch me. He touched me down there." [Victim] pointed to her vagina.

Ms. Peiffer did not question [Victim] further at that point because she was "having a panic attack." Ms. Peiffer called her father, who told her to call the police. The police were called that day, December 15, 2015, and Ms. Peiffer was told to take [Victim] to the Children's Resource Center for an interview. Prior to [Victim] telling her about the incident with [Appellant], it had been about six months since Ms. Peiffer and her kids had last seen him. They had all been at a playground together. Prior to that, the last time [Victim] spent time alone together was three years earlier. . . .

[Victim] was the next Commonwealth witness called to the stand. [Victim] testified that she was twelve years old, a straight-A student, member of National Junior Honor Society, band, and math counts [*sic*]. She resides in Middletown with her mom, mom's boyfriend (Mr. Paduani), two younger sisters and two younger brothers[.] [Victim] confirmed that she and her mom and brother lived with [Appellant] at different residences, including one in Dauphin and her current home in Middletown. [Victim] testified that she got along well with [Appellant] and he was like a dad to her. The last time [Victim] stayed with [Appellant] overnight was when she was in second grade around Christmastime. It was in the apartment he lived in near her grandparents' house. [Victim] and her brother [N.P.] were sleeping in the living room in front of the TV on the floor, and [Appellant] was in his bedroom. [Victim] testified that at some point [Appellant] called [her] into his bedroom. She laid down with him on his mattress and they started talking. [Victim's] back was facing [Appellant] and he started rubbing her stomach from behind her. He had lifted her night gown to do so. She was wearing a Hello Kitty night gown and underwear. [Victim] attested that [Appellant] then started to move his hand down to the front of her underwear, and said, "Don't tell anyone that I'm doing this because I can get in serious trouble." His hand was not inside her underwear, but on top of it, in front. He rubbed his hand on her private area on top of her underwear. [Victim] recalls [Appellant] wearing a tee shirt and boxers, and they were underneath the bed covers at the time of the incident. [Victim] remained still, facing the wall. When [Appellant] moved his hand aside, she got up and went back into the living room, feeling insecure and uncomfortable. [Victim] testified that she was afraid

to tell her mom what happened because she feared [Appellant] might hurt her. She eventually told her mom what happened when she was in the fifth grade.

Detective Lee Tarasi of the Susquehanna Township Police Department was the final Commonwealth witness. He testified that once the police receive a complaint in reference to a potential child abuse case, they will either contact Childline or it will get turned over to the Criminal Investigation Division, which is Detective Tarasi's division. Two investigations take place concurrently: Children and Youth as well as a law enforcement investigation. The child is then forensically interviewed by a child interview specialist at Children's Resource center, and the interview is recorded. In this case, Detective Tarasi got the case and made the initial call to Childline. He was present for [Victim's] interview, but observed from another room by closed circuit television. The interview took place on December 29, 2015. A copy of such interview was admitted and published to the jury.

[Appellant] was the last to take the stand. He confirmed the prior testimony that [Victim] and [N.P.] did not have a relationship with their biological father, and he took on that role with them. He testified that he was affectionate with the children, encouraged them, disciplined them, and took care of them. He said that several times during his relationship with Ms. Peiffer, they spoke to the children together about appropriate versus inappropriate touching. He and Ms. Peiffer broke up after [Appellant] caught her cheating with Mr. Paduani, the father of Ms. Peiffer's younger children. After the break-up, [Appellant] confirmed that he still saw [Victim] and [N.P.], and that such contact was encouraged by Ms. Peiffer. [Appellant] attested that he saw [Victim] after the night in question and it was not the last time she stayed the night with him. [Appellant] moved back to the Carlisle area to care for his mother and claimed that his relationship with [Victim] and [N.P.] was still a good one. [Appellant] testified that throughout the five years he spent with the kids, he never had sexual thoughts about them, he never touched [Victim] inappropriately, and was distraught when he was being investigated for such allegations.

Trial Court Opinion, 6/6/18, at 2-6 (citations to notes of testimony omitted).

On October 25, 2017, a jury found Appellant guilty of indecent assault, unlawful contact with a minor, and corruption of minors. Appellant's sentencing was deferred by the trial court for the preparation of a pre-sentence investigation report. On February 15, 2018, the trial court sentenced Appellant to a total of one to seven years of incarceration followed by a five-year probationary period.

Appellant filed a timely post-sentence motion, which the trial court denied. Appellant filed this timely appeal on March 20, 2018. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents two issues for our review:

1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S POST-SENTENCE MOTION BECAUSE THE JURY VERDICT WAS SO CONTRARY TO THE WEIGHT OF THE EVIDENCE AS TO SHOCK ONE'S SENSE OF JUSTICE WHERE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT HAD INDECENT CONTACT WITH THE COMPLAINING WITNESS, COMMUNICATED WITH HER FOR THE PURPOSE OF ENGAGING IN PROHIBITED SEXUAL ACTIVITY, OR CORRUPTED THE MORALS OF A MINOR?

2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHERE THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE AND UNREASONABLE IN LIGHT OF THE APPELLANT'S REHABILITATIVE NEEDS AND WHAT WAS NECESSARY TO PROTECT THE COMMUNITY?

Appellant's Brief at 6.[4]

In his first issue, Appellant argues that his verdict was against the weight of the evidence.[5] This claim was properly preserved below,[6] and we therefore address the merits of Appellant's argument. We have stated,

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable

---

[4] Appellant's Rule 1925(b) statement raises a sufficiency of evidence claim not presented in his appellate brief. **See** Rule 1925(b) Statement, 4/6/18, at 2. However, because Appellant abandoned the claim in his brief, we will not address it. **See** Appellant's Brief at 6; **see also Commonwealth v. Briggs**, 12 A.3d 291, 310 n.19 (Pa. 2011), **cert. denied**, 132 S. Ct. 267 (2011) (refusing to address claim appellant raised with trial court but subsequently abandoned in brief).

[5] While substantively Appellant's first issue attacks the weight of the testimonial evidence against him, his statement of the issue purports to set forth a sufficiency of the evidence argument as well. Appellant's Brief at 6 ("[T]he Commonwealth failed to prove beyond a reasonable doubt that the Appellant had indecent contact with the complaining witness, communicated with her for the purpose of engaging in prohibited sexual activity, or corrupted the morals of a minor[.]"). Appellant has waived any sufficiency of evidence claims by failing to develop them as separate issues in his appellate brief. **See Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (claim of insufficient evidence for multiple convictions was underdeveloped, did not set forth the elements of the crimes, did not argue which specific element was not met, and thus was waived); **Commonwealth v. Plante**, 914 A.2d 916, 924 (Pa. Super. 2006) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review.").

[6] In compliance with Pennsylvania Rule of Criminal Procedure 607, Appellant preserved his weight of the evidence claim for this Court's review by initially raising the claim in a motion for a new trial. Appellant's motion was included in his post-sentence motion filed with the trial court on February 23, 2018. Appellant's Post-sentence Motion, 2/23/18, at unnumbered 3-4.

on appellate review. "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim."

*Gibbs*, 981 A.2d at 282 (citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Id.* (citation omitted).

Appellant asserts that the Commonwealth's witnesses were not credible and therefore his convictions are against the weight of the evidence. Specifically, Appellant avers that the Victim's "failure to report this incident within a reasonable time frame diminishes the weight of her testimony," and her credibility is severely negated by Appellant's close relationship with the Victim's family and Ms. Peiffer "testifying that she never suspected [Appellant] of hurting the children in any way." Appellant's Brief at 19-20. Appellant therefore argues that the trial court erred in denying his motion for a new trial because "the verdict was so contrary to the weight of the evidence as to shock one's sense of justice." *Id.* at 18.

Appellant's claim rests solely on the weight given to the Victim's testimony. *See id.* at 18-20. At trial, Victim testified that she was twelve years old. N.T., 10/24/17, at 57. She testified that the last time she spent the night at Appellant's apartment was when she was in the second grade. *Id.* at 62. That night, Appellant called her into his bedroom and proceeded to rub the Victim's vaginal area with his hand on the outside of her underwear.

*Id.* at 64-66, 69. Victim further testified that Appellant remarked: "Don't tell anyone that I'm doing this because I can get in serious trouble." *Id.* at 67. When asked about the delay in reporting, the Victim testified that she was scared Appellant would hurt her if she reported the incident. *Id.* at 72-73. However, in the fifth grade, approximately three years later, Victim testified that she reported the incident to her mother. *Id.* at 73.

To allow Appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted). Appellant takes issue with the delay in which the Victim reported the sexual abuse to her mother. Our Supreme Court has specifically held that such a delay is relevant to the credibility of a victim's testimony. *Commonwealth v. Snoke*, 580 A.2d 295, 298 (Pa. 2004) (citing *Commonwealth v. Lane*, 555 A.2d 1246, 1250-51 (Pa. 1989)) ("[U]nquestionably, a prompt complaint is a factor which must be assessed with all of the other pertinent evidence bearing upon the question of the credibility of the complaining witness . . . consideration should be given to factors inherent in cases involving minor victims which may explain the delay without reflecting unfavorably on the minor witness' credibility."). Moreover, we have held that a lack of prompt complaint is something to consider, but "by itself *it doesn't mean that the event didn't occur.*" *Commonwealth v. Jones*, 672 A.2d 1353, 1358 (Pa. Super. 1996)

(emphasis in original). "[T]he law is that lack of a prompt complaint should cause the jury to look more critically upon the credibility of the victim." ***Id.***

Instantly, Appellant is asking this Court to re-weigh the testimonial evidence presented at trial and replace the credibility determinations of the jury with our own. That is not our function as an appellate court. ***Talbert***, 129 A.3d at 546 (internal citation omitted). The jury found that the Commonwealth's evidence proved Appellant committed indecent assault, unlawful contact with a minor, and corruption of minors. Appellant points to no evidence that the verdicts are "so contrary as to shock the conscience." ***Id.*** Accordingly, the trial court did not abuse its discretion in denying Appellant's weight claim.

In his second issue, Appellant challenges the discretionary aspects of his sentence, averring that the "sentence imposed by the sentencing court is manifestly excessive such that it constitutes too severe a punishment where the court failed to consider that the Appellant has no prior record and was a productive member of society." Appellant's Brief at 22.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014), ***appeal denied***, 104 A.3d 1 (Pa. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary

aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted), *appeal denied*, 86 A.3d 231 (Pa. 2014). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted), *appeal denied*, 91 A.3d 161 (Pa. 2014).

Appellant has complied with the first three prongs of this test by raising his discretionary sentencing claims in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) concise statement. *See* Appellant's Brief at 15-17. Therefore, we examine whether Appellant presents a substantial question for review.

Appellant argues that the trial court imposed an excessive sentence where it failed to consider Appellant's criminal history and societal contributions. Appellant's Brief at 22. This argument presents a substantial question. *See Dodge*, 77 A.3d at 1272 ("[A]n excessive sentence claim, in conjunction with an assertion that the court did not consider mitigating

factors, raise[s] a substantial question."). We thus review Appellant's

sentencing claim mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11-12 (Pa. Super. 2007) (internal

quotations and citations omitted).

The relevant portion of 42 Pa.C.S.A. § 9721(b) states:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

*Id.*

This Court has also held, "[w]hen a sentencing court has reviewed a

pre[-]sentence investigation report, we presume that the court properly

considered and weighed all relevant factors in fashioning the defendant's

- 11 -

sentence." **Baker**, 72 A.3d at 663 (citing **Commonwealth v. Fowler**, 893

A.2d 758, 767 (Pa. Super. 2006)). Additionally:

> [i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

**Fowler**, 893 A.2d at 767-68 (citing **Commonwealth v. Boyer**, 856 A.2d 149,

154 (Pa. Super. 2004)) (some internal citations omitted).

At the outset of the February 15, 2018 hearing, the Commonwealth

noted that Appellant's sentencing was deferred for the preparation of a pre-

sentence investigation report. N.T., 2/15/18, at 2. The trial court also

acknowledged that "a pre-sentence report was prepared and considered."

Trial Court Opinion, 6/6/18, at 11. Before imposing Appellant's sentence in

open court, the trial court commented:

> [T]his Court has sat now for well over 20 years and we've seen all types of crime that's been committed in various degrees and levels. And in this particular case there's not the penetration types of concerns. And the first view of the case is although it is a victim crime, although it is a heinous crime, it is not as outrageous as it could have been. That doesn't mitigate it, it just tries to put it in the light of trying to balance where, when you're weighing the rehabilitative needs of the defendant, which you have to do, and where you weigh the circumstances under which it occurred, each crime occurs. And when you weigh the crime itself you have a type of sliding scale.
>
> What this case brings out, and I think it widened my eyes a little more than my sometimes more callus objective attempt to

analyze criminal activity, is impact. Here the impact had a reverberating reaction that all too often is ignored by the [c]ourt. And I dare say the impact statement -- and noting the trial as it went -- became really apparent.

N.T., 2/15/18, at 8-9.

Based on our review of the record – including the notes of testimony from the sentencing hearing and the above remarks by the trial court – we conclude that the trial court considered the appropriate factors when imposing Appellant's sentence. The trial court specifically discussed the severity of Appellant's crimes, the rehabilitative needs of Appellant, and victim impact. Ultimately, and in its discretion, the trial court determined that Appellant's convictions warranted a one-year minimum sentence. Thus, we find no merit to Appellant's second issue.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2018